HORATIO N. ROWLEY v. DIADEMA BATES AND ELIZA
COLGROVE.

*Partnership—Chattel mortgage—Payment—Merger.*

A father and his two sons were carrying on a private bank as
partners. The father furnished the capital, and took notes and
securities in his name. A debtor of the firm assigned a chattel
mortgage to the father in payment of a firm debt, after which
one of the sons purchased the mortgaged property for the pur-
pose of securing other indebtedness due the firm, and a bill of
sale was taken in the name of the other son. It was agreed
that the firm should pay two subsequent mortgages on the
property. The agreement was not kept, and the mortgagees
took possession of the property, which was replevied by the
father under the first mortgage. And it is held that the first
mortgage was in fact the property of the firm; that the bill of
sale was in fact taken for the firm; that the transaction
operated as a payment of the first mortgage; and that the mort-
gagees had the right to proceed against the property, which
was taken by the firm subject to their mortgages.

Error to Jackson. (Peck, J.) Argued October 4, 1893.
Decided November 10, 1893.

Replevin. Plaintiff brings error. Affirmed. The facts
are stated in the opinion.

*Blair & Wilson,* for appellant, contended:

1. In view of the evidence that the plaintiff owned the entire capi-
tal stock of the bank; that the business was conducted in his
name; that indebtedness to the bank was an indebtedness to
him individually; that the debts of the bank were his indi-
vidual debts; that the accounts of the bank were kept in his
name; that investments were required to be submitted to him;
and that all the papers ran to him,—we submit that the fact
that the sons each received one-third of the net profits for
their services did not show a partnership between the parties;
citing *Hall v. Edson,* 40 Mich. 651; *Wilcox v. Malthews,* 44 Id.
192.

2. But whether the Rowleys were partners or not, and whether the plaintiff's mortgage was part of the partnership assets or not, are questions of no importance, since the transaction between Bates and the plaintiff's sons, so far as the grocery stock and other property covered by plaintiff's mortgage were concerned, had no reference whatever to the partnership affairs. The most that can possibly be claimed for this transaction is that one partner was endeavoring to pay his individual debt with the firm's mortgage, and such attempt would not affect the plaintiff's rights under the mortgage, unless made with his consent or ratification, of which there is not even a pretense; citing *Kingsbury v. Tharp*, 61 Mich. 216; *Chase v. Iron Works*, 55 Id. 139.

3. We do not doubt the authority of a partner to take goods in payment of a partnership debt, and to sell off the goods, and, if he deems it advisable, to keep up the stock for a time, for the purpose of selling the goods to advantage; citing *Tobacco Co. v. Jenison*, 48 Mich. 459; but we say that is not this case, and that the defendants, upon whom lay the burden of proving that this case was of that character, have overwhelmingly disproved it.

4. The contract, as testified to by the defendants and their witnesses, is plainly not a transaction in behalf of the partnership, and, if it was, was not within its scope. While a bank partner might have a right to receive groceries in payment of a bank debt, he would have no right to buy groceries, and pay for them with the bank's assets; citing *Hubenthal v. Kennedy*, 76 Iowa, 707; *Clift v. Moses*, 112 N. Y. 426; *Lockwood v. Beckwith*, 6 Mich. 168; *Barnard v. Plank Road Co.*, Id. 274; *Hotchin v. Kent*, 8 Id. 526; *Towle v. Dunham*, 84 Id. 279; *Gooding v. Underwood*, 89 Id. 187.

*A. E. Hewett* (*Eugene Pringle,* of counsel), for defendants.

McGRATH, J. Plaintiff and his two sons were carrying on a private bank at Hanover. The case was tried upon the theory that the father and sons were partners. Plaintiff furnished all the capital, and the notes and securities held by the bank ran to him. One Potter was indebted to the bank, and assigned to plaintiff a note and chattel mortgage against the grocery stock of one Bates, receiving in consideration therefor a receipt in full for his indebtedness to the bank, and a bank credit for the balance. The mortgage was afterwards reduced by payment to $250, but Bates owed the bank $215 in addition, which was unse-

cured.    Bates had given other mortgages upon his stock,
—one of $550 to defendant Colgrove, and another of $310
to defendant Bates, who was the grocer's mother.    Bates
owed other unsecured debts, and his creditors were press-
ing him for payment.    Daniel D. Rowley, in company
with an attorney, saw Bates with reference to securing the
payment of the indebtedness to the bank.    The attorney
advised Daniel D. that the best method of securing pay-
ment was to buy out Bates, and negotiations were entered
into with reference to such purchase.    Defendants' version
of the affair is that Bates gave a bill of sale of the stock
and book accounts, in consideration of which the mortgage
held by Horatio N. Rowley, Sr., was to be considered as
paid and treated as discharged, the mortgages held by
defendants were to be paid, and out of the book accounts
the bank's unsecured claim was to be paid, after which
the accounts receivable remaining after the payment of the
bank's unsecured claim were to be turned back to Bates.
A bill of sale was immediately prepared by the attorney,
which, by direction of Daniel D. Rowley, was made out
in favor of Horatio N. Rowley, Jr., who afterwards took
possession thereunder.    Defendants' mortgages were to be
paid, one at once, and the other within five days.    Defend-
ants waited some 20 days, and, the mortgages not having
been paid, took possession under their mortgages, after
which Horatio N. Rowley, Sr., replevied under the first
mortgage.    Defendants had judgment, and plaintiff appeals.

The jury have in fact determined that the mortgage
held by Horatio N. Rowley, Sr., was held for and owned
by the partnership; that the purpose of the purchase of
the stock of goods was to secure the unsecured indebted-
ness due the bank; and that defendants' version · of the
transaction is the correct one.    There was in this case no
attempted application of partnership assets to the payment
of an individual debt, nor was this in any sense a purchase

of a stock of groceries for or in the interest of one member of the partnership. The avowed purpose of the negotiations with Bates, as testified to by Daniel D. Rowley, was to secure the payment of the debt due the bank. Prior to the actual transfer, Horatio N. Rowley, Jr., knew only of this purpose. He gave no instructions of an individual character. He did not know of the contemplated purchase, or that he was to be the assignee, until the bill of sale had been actually executed and delivered. The first mortgage was in fact the property of the bank. It is as though payment of that mortgage had been made to the bank. Such payment would operate as a discharge. Horatio N. Rowley, Jr., was simply designated as the assignee. He took, not for himself, but for the bank.

Suppose it be conceded that the agreement to pay the incumbrances was *ultra vires*, the defendants were proceeding, not against the bank upon that agreement, but against the property under the mortgages. The bank took the stock of goods subject to these incumbrances, and, the prior mortgage having been satisfied, defendants had a right to proceed against the stock.

The judgment is therefore affirmed.

HOOKER, C. J., GRANT and MONTGOMERY, JJ., concurred. LONG, J., did not sit.